**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| CYREKA JACOBS,<br><br>                              Plaintiff,<br><br>vs.<br><br>EXPERIAN DATA CORP. d/b/a EXPERIAN RENTBUREAU; and BOZZUTO MANAGEMENT COMPANY,<br><br>                              Defendant. | Case No.: 1:25-cv-02180 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Cyreka Jacobs ("Plaintiff" or "Ms. Jacobs") by and through her counsel brings the following Complaint against Experian Data Corp. d/b/a Experian RentBureau ("Experian") and Bozzuto Management Company ("Bozzuto") (both defendants collectively, "Defendants"), for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report ("consumer report") that Experian published to Plaintiff's potential landlord, which falsely portrayed and conveyed that Plaintiff had an outstanding write-off balance of $196.08 with Liberty Harbor East ("Liberty Harbor"), an apartment complex managed Bozzuto. Plaintiff also brings a claim against Bozzuto for failing to fully and properly investigate Plaintiff's dispute and review all relevant information provided by Plaintiff and Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b). Put simply, Defendants made Plaintiff out to be a delinquent and risky tenant by conveying that she failed to pay her rental obligation.

## INTRODUCTION

1.      This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2.    Defendants are consumer reporting agency ("CRA") that compile and maintain files on consumers on a nationwide basis.  It sells consumer reports, also known as tenant screening reports, generated from its database and furnishes these consumer reports to mortgage brokers, landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3.    Defendant Experian assembled and published an inaccurate consumer report to Plaintiff's prospective landlord, which included a write-off balance of $196.08 purportedly owed to a previous landlord, Bozzuto.

4.    That was not true, as Plaintiff had timely paid-off the entirety of her rental balance to that previous landlord, Bozzuto, and owed them nothing.

5.    In fact, Plaintiff has never before been late on a rental payment obligation.

6.    As a result of Defendants' communications and inactions, Plaintiff's prospective landlord denied Plaintiff's housing application after receiving the inaccurate consumer report from Experian, in which Experian published the inaccurate write-off balance of $196.08.

7.    Had Bozzuto performed even a cursory review of Plaintiff's dispute and its own internal records, it would have discovered that Plaintiff did not have any outstanding balances or write-offs.

8.    Experian does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9.    Had Experian conducted a reasonable reinvestigation of Plaintiff's dispute and all relevant enclosures and documents, it would have corrected its reporting and published an accurate report to Plaintiff's potential landlord.

10.     Defendants committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate information.

11.     Defendants' inaccurate reporting and reasonable investigations cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of her needs, causing her emotional distress, embarrassment, inconvenience, anxiety, and financial loss.

12.     As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity; loss of time and money trying to correct the consumer report; loss of money in that the cost of her current apartment is higher than what she would have paid monthly had she secured her applied-for apartment that she was denied, the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13.     As a result of Defendants' conduct, action, and inaction, Plaintiff brings claims against Experian for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA, and for failing to conduct a reasonable reinvestigation to determine whether the information that Plaintiff disputed — the write-off balance of **$196.08** – was inaccurate and should be corrected in the subject employment report, in violation of the FCRA, 15 U.S.C. § 1681i; and Plaintiff brings a claim against Bozzuto for failing to fully and properly investigate Plaintiff's dispute and review all relevant information provided by Plaintiff and Experian, in violation of the FCRA, 15 U.S.C. § 1681s-2(b).

## PARTIES

14.     Cyreka Jacobs ("Plaintiff" or "Ms. Jacobs") is a natural person residing in Towson, Maryland, and she is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

15.     Defendant Experian Data Corp. d/b/a Experian RentBureau ("Experian") is a corporation doing business throughout the United States, including the State of Maryland and in this District, and has a principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

16.     Defendant Bozzuto ("Bozzuto") is a corporation doing business throughout the United States, including the State of Maryland and in this District, and has a principal place of business located at 6406 Ivy Lane, Suite 700, Greenbelt, Maryland 20770.

17.     Among other things, Defendant Experian sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant.  These reports are provided in connection with a business transaction initiated by the consumer.

18.     Defendant Experian is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for consumer purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

19.     Defendant Bozzuto is a property management company and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

22.     Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing.  Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

23.     While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports.  15 U.S.C. § 1681.

24.     Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

25.     Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

26.     Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates consumer reports like the one Defendant Experian prepared in Plaintiff's name.

27.     The FCRA provides a number of protections for housing applicants who are the subject of consumer reports for the purpose of securing housing and credit.

28.     In the parlance of the FCRA, tenant screening reports are "consumer reports," and providers of consumer reports, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

29.     The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

30.     Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

31.     Defendants disregarded their duties under the FCRA with respect to Plaintiff's consumer report.

## DEFENDANT EXPERIAN'S ILLEGAL BUSINESS PRACTICES

32.     Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the tenant screening industry.

33.     In the tenant screening industry, consumer reports are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are

6

created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating consumer reports.

34.    Consumer Reporting Agencies, like Defendant Experian, collect millions of records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

35.    Given that Experian is in the business of selling consumer reports, Experian should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

36.    Experian places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Experian to produce reports containing information that is inaccurate and incomplete than it is for Experian to exert proper quality control over the reports prior to their being provided to Defendant's customers.

37.    Experian reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

38.    Experian charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

39.    Appropriate quality control review of Plaintiff's report would have made clear that Experian was reporting an outstanding write-off balance of $196.08.

40.    As a provider of consumer reports, Experian should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA").

PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

**A.    Plaintiff Applies for an Apartment with Falls Village**

41.    In or around April 2025, Plaintiff began searching for a new apartment in Maryland.

42.    Specifically, Plaintiff was searching for an apartment that was in a safe neighborhood and within her new budget.

43.    Additionally, because Plaintiff does not own a vehicle, she needed an apartment within walking distance of grocery stores and other essential services. She also prioritized proximity to her workplace to allow for walking or public transportation.

44.    Affordability and safety were paramount concerns for Plaintiff. At the time, Plaintiff was adjusting to the postpartum period shortly after welcoming her first child, a baby girl.

45.    As well, at the time, Plaintiff and her partner had been separated, thereby reducing Plaintiff's financial flexibility.

46.    Plaintiff was keen on finding an apartment suitable for her and her forthcoming baby and that adequately accounted for her single income while working in the public sector.

47.    After an arduous and stressful search, on or about April 22, 2025, Plaintiff found and applied for a one-bedroom apartment at Falls Village, located at 6222 Green Meadow Parkway Baltimore, Maryland, 21209.

48.    When submitting her application, Plaintiff paid a requisite $30 application fee.

49.    Plaintiff was excited about the apartment that she had found because rental payments were slated to be a few hundred dollars cheaper per month as compared with her at-the-

time apartment, the apartment was located in a familiar area, and the location was incredibly walk-friendly making necessities accessible even without the need for a vehicle.

50.     Plaintiff also expected that utilities would be less expensive at the new apartment, given its smaller size.

51.     Furthermore, the location was nearer to her work, cutting down on commute times by almost half. Notably, Plaintiff had typically used Uber rideshare to commute to work, and the apartment was not only nearer to her work but also on a direct transit line that would enable her to use public transit and save on Uber costs altogether.

**B.     Defendant Experian Published an Inaccurate Consumer Report to Falls Village**

52.     Falls Village contracted with RentGrow, Inc. ("RentGrow") to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

53.     On or about April 24, 2025, Falls Village ordered a consumer report on Plaintiff from RentGrow, a tenant screening company.

54.     On April 24, 2024, RentGrow sold a consumer report about Plaintiff to Falls Village, wherein RentGrow published information that it had obtained from various sources, including from Experian.

55.     RentGrow's consumer report published a variety of information concerning Plaintiff, including a compilation of Plaintiff's credit history, criminal history, rental history, and civil records history.

56.     The consumer report, identified as a property screening report by RentGrow, is a consumer report regulated by the FCRA.

57.    Within that consumer report, RentGrow published the inaccurate information provided by Experian about Plaintiff in the "Rental History Search" section.

58.    Specifically, the consumer report about Plaintiff included a grossly inaccurate outstanding write-off balance of $196.08 associated with her previous apartment at Liberty Harbor, located in Baltimore County, Maryland, which appeared in the consumer report as follows:



59.    The Rental History Search section, that included the inaccurate write-off balance of $196.08, was reported to RentGrow by Experian.

60.    To her knowledge, the plaintiff had never had a write-off balance and was unaware of what a write-off balance was.

61.    In fact, on April 26, 2025, Bozzuto would admit and confirm to Plaintiff that she never had an outstanding write-off balance pertaining to the Bozzuto apartment or account.

62.    The write-off balance, as reported in the Rental History Search and purportedly relating to the Liberty Harbor housing managed by Bozzuto (referred to herein as the "Housing Debt") was inaccurate and materially misleading.

63.    The Housing Debt conveyed and portrayed to third parties that Plaintiff was a risky tenant who may not be trusted to make timely rental payments in regard to her housing.

64.    Upon information and belief, sole reason the inaccurate Housing Debt was reported as belonging to Plaintiff was that Defendant Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information it sold to RentGrow.

65.    Upon information and belief, had Defendant Experian followed reasonable procedures, it would have discovered that Plaintiff did not have a write-off balance associated with Bozzuto.

66.    Upon information and belief, in preparing and selling a consumer report about Plaintiff, wherein Experian published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Experian failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

67.    Upon information and belief, Experian took no steps whatsoever to review, analyze, or audit the information it sold prior to selling a consumer report about Plaintiff to RentGrow in April 2025.

68.    Upon information and belief, Experian received the Housing Debt information concerning Plaintiff from Bozzuto in or around August 2024 and published that information about six months later without first verifying the information with Bozzuto or anyone else.

69.    Upon information and belief, Bozzuto is an unreliable furnisher of consumer information.

70.     Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the inaccurate Housing Debt that it published and maintained concerning Plaintiff.

**C.      Falls Village Denies Plaintiff's Housing Application**

71.     On or about April 24, 2025, Plaintiff was notified by Falls Village that her housing application was denied as a direct result of the Housing Debt reported by Experian.

72.     The Housing Debt that appeared on the RentGrow report, which information RentGrow had obtained from Experian, was the sole reason that Plaintiff was denied the Falls Village apartment.

73.     Shortly thereafter, Plaintiff obtained a copy of the consumer report and was shocked and humiliated upon reviewing the write-off that was contained within the consumer report.

74.     Plaintiff knew that she had made all her payments to Bozzuto and that when she moved out of that complex and terminated that lease, in or around August 2024, she no longer owed any balance or amount to Bozzuto.

75.     Thereafter, Plaintiff contacted Bozzuto directly to inquire about the Housing Debt reported by Experian and RentGrow.

76.     Bozzuto seemed puzzled by Experian's reporting as relayed to them by Plaintiff.

77.     On or about April 26, 2025, Bozzuto confirmed to Plaintiff via email that Plaintiff moved out of the complex with a $0 balance and no write-offs.

78.     After receiving this confirmation, Plaintiff notified RentGrow via telephone about the erroneous Housing Debt that appeared in its consumer report. However, RentGrow directed Plaintiff to contact Experian directly.

79.     Accordingly, in or around the end of April 2025, Plaintiff attempted to contact Experian by phone to dispute the inaccurate Housing Debt information; however, Plaintiff reached a representative who refused to grant her access to her account or assist her in resolving the issue.

80.     Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that she owed the Housing Debt both in relation to Falls Village, but also the impact of the same on her future.

**D.     Plaintiff Disputed the Misinformation in Her Consumer Report**

81.     On or about May 8, 2025, desperate to secure housing with Falls Village and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate Housing Debt information with RentGrow.

82.     Plaintiff disputed online with RentGrow.

83.     In her dispute, Plaintiff specifically disputed the inaccurate report of the Housing Debt.

84.     In her dispute, Plaintiff identified herself and provided information to RentGrow to support her dispute. Specifically, Plaintiff attached the email confirmation from Bozzuto supporting that she did not owe the Housing Debt.

85.     Plaintiff specifically asked RentGrow to investigate and correct its reporting in any consumer report about Plaintiff.

**E.     Defendant Experian Failed to Conduct a Reasonable Reinvestigation and Correct the Consumer Report**

86.     On May 23, 2025, Plaintiff received a dispute response from RentGrow which included documents from Experian.

87.     In its response, Defendant Experian stated that it had updated the reporting.

88.    However, Experian continued to report a "U" in the payment history for the month of August 2024, indicating a non-rent write-off occurred during that month. In addition, Experian continued to include an "Aggregate Non-Rent Writeoff History" amount of $196.08.

89.    Upon information and belief, Experian only partially updated Plaintiff's report, but failed to remove the offending, disputed, and inaccurate information, namely, the fact of the Housing Debt.

90.    Upon information and belief, Defendant Experian failed to issue a corrected and accurate consumer report to Falls Village.

91.    Despite Plaintiff's dispute, Defendant Experian failed to conduct a reasonable reinvestigation of Plaintiff's May 8, 2025, dispute and failed to correct the disputed information in violation of 15 U.S.C. § 1681i(a)(1)(A).

**F.    Defendant Bozzuto Failed to Conduct a Reasonable Investigation and Correct the Consumer Report**

92.    Upon information and belief, on or about May 8, 2025, Bozzuto received notice from Experian of Plaintiff's dispute.

93.    Upon information and belief, in response to its receipt of Plaintiff's dispute, Bozzuto failed to conduct a reasonable investigation with respect to the information disputed by Plaintiff.

94.    Upon information and belief, Bozzuto failed to review all relevant information provided by Experian regarding Plaintiff's dispute.

95.    Upon information and belief, in relation to Plaintiff's May 2025 dispute, Bozzuto verified to Experian that some or all of the disputed information relating to the Housing Debt was accurately reported as to Plaintiff.

14

96.    Bozzuto violated 15 U.S.C. § 1681s-2b by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to modify, delete, or permanently block the disputed information that was inaccurate, incomplete or unverifiable.

97.    Based on Experian's reporting of information after her dispute, Plaintiff reasonably believes that Bozzuto continued and continues to furnish Housing Debt information, fully or partially, to Experian that inaccurately suggests that Plaintiff is a risky tenant who had, at one time, not timely paid her rental obligations.

**G.    Additional Damages Caused by Defendants**

98.    Throughout this time period and while her Experian dispute was pending, Plaintiff, as a new mother of her baby daughter, was extremely worried and disturbed by the prospect of being left homeless and without any alternative housing.

99.    Plaintiff's lease renewal deadline was on May 31, 2025, and was fast approaching, and Plaintiff could not stomach to wait any longer and risk.

100.    Therefore, during the week of May 23, 2025, and still without a resolution from Experian and with Falls Village still refusing to approve her housing application, Plaintiff submitted notice of her lease renewal to her at-the-time property manager.

101.    Indeed, Plaintiff had tried other paths to being approved with Falls Village.

102.    In particular, Plaintiff obtained from Bozzuto a letter, dated May 22, 2025, that clearly and expressly confirmed that Plaintiff had not been late on housing payments with Bozzuto, and did not owe Bozzuto a balance.

103.    Further, the same Bozzuto letter explained that Bozzuto had made an error in misreporting the Housing Debt, which was "a procedural error on our part and not reflective of [Plaintiff's] payment history standing as a resident."

104.    Plaintiff provided that Bozzuto letter to Falls Village, hoping that Falls Village would understand and not penalize her for Defendants' erroneous reporting.

105.    However, Falls Village refused to rely on the letter with respect to the Housing Debt, and insisted that Plaintiff's background report must be updated and corrected for her application to be properly re-considered and approved.

106.    But for Defendants' inaccurate consumer report, Plaintiff's housing application would have been approved, and Plaintiff would have been spared the humiliation, embarrassment, and stress imposed upon Plaintiff to correct Defendants' erroneous reporting.

107.    Defendants' false reporting cost Plaintiff a housing opportunity that met her needs, including those attendant to affordability, safety, and proximity to work, friends, and family.

108.    Instead, Plaintiff was forced to renew the lease at her current apartment for a new twelve-month term.

109.    Plaintiff was looking forward to living at Falls Village because it was in a safe neighborhood, was near the major highways, her work and family, and was within her budget.

110.    The injuries suffered by Plaintiff as a direct result of Defendants' erroneous reporting and unreasonable investigations are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation and invasion of privacy.

111.    As a result of Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity; loss of time and money

trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

112.    As a direct result of Defendants' conduct, Plaintiff is stressed, anxious and frustrated. Plaintiff is responsible for the care of a six-month old child and worries about securing a better place for herself and her daughter to live.

113.    Due to Defendants' actions, and aside from the significant emotional distress suffered by Plaintiff, and the deprivation of her ability to secure more affordable, suitable, beautiful, safe, and convenient housing, Plaintiff will have to pay an estimated $268 *more* per month in rent than she would have had to pay at Falls Village.

114.    Due to Defendants' actions, Plaintiff was prevented from residing in the neighborhood that is most suitable to her and her child's needs and will be deprived of the associated lifestyle and health benefits.

115.    During this period, throughout the entire month of May, leading up to the day when Plaintiff expressed her intent to renew, Plaintiff continued to search for and visit other apartments.

116.    However, the anxiety surrounding whether or not she would be approved based on the inaccurate reporting, and her reasonable belief that the Housing Debt reporting would most likely prevent her from successfully securing any applied-for housing, prevented her from applying to other units, as it did not make sense to submit and pay for rental applications even while anticipating that such applications would be denied.

117.    Upon information and belief, Plaintiff will have higher utility bills. Further, Plaintiff will have to continue spending an estimated $40.00-$50.00 on Ubers just to get to work.

118.    Upon information and belief, Falls Village would not have approved Plaintiff's application for housing at Village Falls based on the background report that Experian had prepared after it had completed its purported reinvestigation of Plaintiff's dispute.

119.    In addition, Plaintiff's time was wasted by having to dispute with Defendant.

120.    Plaintiff's emotional distress due to each of Defendants' conduct manifested in many ways, including as follows: Plaintiff switched to feeding her child solely with formula, in substantial part because her stress inhibited her ability to feed her child naturally; Plaintiff experienced migraine headaches, and has been prescribed medication to prevent such migraine headaches; and Plaintiff has lost sleep.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendant Experian)**

121.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

122.    Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

123.    At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

124.    At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

125.    Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

126.    As a result of Experian's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep;; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

127.    Experian willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Experian was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

128.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Experian)**

129.    Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

130.    The FCRA mandates that a CRA conducts an investigation of the accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer.  See 15 U.S.C. § 1681i(a)(1).  The Act imposed a 30-day time limit for the completion of such an investigation.  *Id*.

131.    The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the

accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file.  See 15 U.S.C. § 1681i(a)(5)(A).

132.    On at least one occasion during 2025, Plaintiff disputed the inaccurate information with Defendant Experian and requested that Defendant Experian correct and/or delete the inaccurate information in the employment report that is patently inaccurate, misleading, and highly damaging to her, namely, the inaccurate Housing Debt.

133.    In response to Plaintiff's dispute, Defendant Experian failed to conduct a reinvestigation, or such investigation was so shoddy as to allow patently false, logically inconsistent, and damaging information to remain in the consumer report and refused to correct the consumer report at issue.

134.    Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate; by failing to delete the disputed inaccurate information from the subject consumer report; by failing to follow reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file; and by relying upon verification from a source it has reason to know is unreliable.

135.    As a result of Defendant Experian's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

136.    Defendant Experian willfully violated 15 U.S.C. § 1681i in that its conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

137.    Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681s-2(b)**
**Failure to Conduct an Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(First Claim for Relief Against Defendant Bozzuto)**

138.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

139.    Defendant Bozzuto furnished the inaccurate information relating to Plaintiff to Defendant Experian.

140.    Defendant Bozzuto violated 15 U.S.C. § 1681s-2(b) by failing to investigate Plaintiff's dispute, or otherwise by failing to fully, reasonably, and properly investigate Plaintiff's dispute(s), including but not limited to failing to review all relevant information regarding the same; by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the inaccurate information relating to Plaintiff to Experian; by failing to cease furnishing inaccurate information relating to Plaintiff to Experian; and by failing to verify only accurate information to Experian in response to receiving notice of Plaintiff's dispute.

141.    As a result of Bozzuto's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunity; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and

trying to correct the inaccurate reporting; damage to her reputation; loss of sleep; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

142.    As a direct result of Bozzuto's conduct, Plaintiff is stressed, anxious and frustrated. Plaintiff is responsible for the care of a six-month old child and worries about securing a better place for herself and her daughter to live.

143.    Due to Bozzuto's actions, and aside from the significant emotional distress suffered by Plaintiff, and the deprivation of her ability to secure more affordable, suitable, beautiful, safe, and convenient housing, Plaintiff will have to pay an estimated $268 *more* per month in rent than she would have had to pay at Falls Village.

144.    Upon information and belief, Plaintiff will not have the opportunity to live in a walkable area and will be deprived of the associated lifestyle and health benefits.

145.    Upon information and belief, Plaintiff will have higher utility bills. Further, Plaintiff will have to continue spending an estimated $40-$50 on Ubers just to get to work.

146.    Upon information and belief, Village Falls would not have approved Plaintiff's application for housing at Village Falls based on the background report that Experian had prepared after it had completed its purported reinvestigation of Plaintiff's dispute.

147.    In addition, Plaintiff's time was wasted by having to dispute with Defendant.

148.    Plaintiff's emotional distress due to Bozzuto's conduct manifested in many ways, including as follows: Plaintiff switched to baby formula to feed her child, in substantial part because her stress inhibited her ability to feed her child naturally; Plaintiff experienced migraine headaches, and has been prescribed medication to prevent such migraine headaches; and Plaintiff has lost sleep.

149.    Bozzuto's conduct, action, and inaction were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Bozzuto were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

150.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant Bozzuto in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

a)    Determining that each of Defendants Experian and Bozzuto negligently and/or willfully violated the FCRA;

b)    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

c)    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and

d)    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: July 7, 2025,                    */s/ Levi Y. Eidelman*
                                        Levi Y. Eidelman, MD Bar No. 30903
                                        **CONSUMER JUSTICE LAW FIRM**
                                        72-47 139th Street
                                        Flushing, New York 11367
                                        T: (718) 360-0763
                                        E: leidelman@consumerjustice.com

                                        *Attorneys for Plaintiff Cyreka Jacobs*